**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 12-21047-CIV-COOKE**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) **PLAINTIFF'S MOTION FOR ENTRY**<br>) **OF DEFAULT JUDGMENT,**<br>) **PERMANENT INJUNCTION, CIVIL** |
| v. | ) **MONETARY PENALTY, AND**<br>) **ANCILLARY EQUITABLE RELIEF** |
| ABRAHAM GUTTERMAN, ALLIANCE CAPITAL METALS LLC, and AR GOLDMAN WEALTH MANAGEMENT, LLC d/b/a U.S. PRINCIPAL FINANCIAL SERVICES, | ) **AGAINST DEFENDANTS PURSUANT**<br>) **TO FED. R. CIV. P. 55(b) AND LOCAL**<br>) **RULE 7.1(a)(1)(E)**<br>)<br>) |
| Defendants. | )<br>) |

**I.     PROCEDURAL HISTORY**

On March 15, 2012, Plaintiff United States Commodity Futures Trading Commission ("CFTC" or "Commission") filed its Complaint for injunctive and other equitable relief and for civil monetary penalties ("Complaint") [D.E. 1] against Defendants, Abraham Gutterman ("Gutterman"), Alliance Capital Metals LLC ("ACM") and AR Goldman Wealth Management, LLC, d/b/a U.S. Principal Financial Services ("ARGWM")(collectively, "Defendants").

The Complaint [D.E. 1] alleges that from at least November 2009 to March 2012 (the "relevant period"), ACM and ARGWM, by and through their employees and agents, and Gutterman, as their controlling person, fraudulently solicited and accepted at least $483,725.88 from at least 15 customers for the purpose of trading gold and oil commodity options contracts ("commodity options"), but instead ACM, ARGWM and Gutterman misappropriated all of these

1

funds for Defendants' personal use.  ACM and ARGWM, by and through their employees and agents, falsely represented to customers and prospective customers that ACM and ARGWM were successful options trading companies that had made a lot of money for their customers, and that ACM was registered with the CFTC, among other things.  Specifically, the Complaint [D.E. 1] alleged Defendants have engaged in options fraud, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulations 32.9 and 33.10, 17 C.F.R. §§ 32.9, 33.10 (2012), and sought, *inter alia,* injunctive relief, disgorgement, restitution and civil monetary penalties.

ACM was served pursuant to Fed. R. Civ. P. (4)(e)(2), by substitute service of a copy of the summons and Complaint, on April 11, 2012.  ACM's Answer was, therefore, due on May 2, 2012.  Proof of service for ACM was filed on April 17, 2012. (D.E. 15).

ARGWM was served pursuant to Fed. R. Civ. P. (4)(e)(2), by personal service of a copy of the summons and complaint upon its registered agent, Spiegel & Utrera, P.A., on April 11, 2012.  ARGWM's Answer was, therefore, due on May 2, 2012.  Proof of service for ARGWM was filed on April 17, 2012. (D.E. 16).

Gutterman was served, pursuant to Fed. R. Civ. P. (4)(e)(2) and Florida Statutes Chapter 48.161 and 48.181, by substitute service of process of a nonresident doing business in Florida on April 11, 2012.  Gutterman's Answer was, therefore, due on May 2, 2012.  On April 18, 2012, the Commission complied with Section 48.161, Florida Statutes, by sending the Secretary of State's acceptance of service, and a copy of the summons and Complaint, by certified mail, return receipt requested, to Gutterman at his Brooklyn, New York residence.  Proof of service for Gutterman was filed with this Court on April 25, 2012. (D.E. 19-20, 23).

Defendants are neither minors nor incompetent.  ACM and ARGWM are limited liability companies and Gutterman is not in the military service of the United States and, thus, the

Soldiers' and Sailors' Relief Act of 1940, 50 U.S.C. §§ 501, *et seq.*, is not applicable. (*See* D.E. 27.1).

Defendants' Answers were due on or before May 2, 2012. None of the Defendants have filed or served an Answer. On May 17, 2012, the CFTC filed its Request for Clerk's Entry of Default against Defendants [D.E. 27] pursuant to Fed. R. Civ. P. 55(a). The Clerk of the Court entered the defaults against Defendants on May 18, 2012 [D.E. 28].

Pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 7.1(a)(1)(E), the CFTC now submits its Motion for Entry of Default Judgment, Permanent Injunction, Civil Monetary Penalty, and Ancillary Equitable Relief Against Defendants ("Motion").

## II.   FACTUAL SUMMARY[1]

### A.   Solicitation Fraud

Defendants ACM and ARGWM, by and through their employees and agents, solicited U.S. customers to invest in commodity options via cold-calls, ACM's website, and at least one face-to-face meeting in a bar in Hialeah, Florida. Abbey Dec. ¶ 2; Osborn Dec. ¶ 2, 4; Plante Dec. ¶ 2; Wood Dec. ¶ 2; Patrick Dec. ¶ 8, 12 and Ex. B. ACM and ARGWM, by and through their employees and agents, used high pressure sales tactics calling customers repeatedly and promising large profits to convince them to invest. Abbey Dec. ¶ 2-5; Osborn Dec. ¶ 2-3; Plante Dec. ¶ 2-3; Wood Dec. ¶ 3-4; Patrick Dec. ¶ 9, 12.

Specifically, ACM and ARGWM, by and through their employees and agents, made the following misrepresentations and omissions of material fact to persuade customers to invest with them:

---

[1] All declarations and exhibits to declarations are located in the Appendix Of Declarations And Exhibits To Memorandum In Support of Plaintiff's Motions For Statutory Restraining Order And Preliminary Injunction. [D.E. 7].

    i. customers would "make a killing" if they invested in commodity options through ACM and ARGWM (Wood Dec. ¶ 4);

    ii. customers would make approximately $200,000 to $300,000 in less than three months with a $20,000 investment in gold options (*Id*.; Abbey Dec. ¶ 3);

    iii. the majority of ACM's and ARGWM's prior customers bought gold options in 20 contract lots and those customers' investments had increased significantly (Wood Dec. ¶ 4);

    iv. customers needed to "get in now" because the price of gold was about to rise from prices of approximately $1,700 to $1,800 per ounce to $2,500 per ounce (*Id*.; Abbey ¶ 4);

    v. for every dollar the price per ounce of gold goes up, the customer's options contracts would increase in value by $500-$2,000 (Plante Dec. ¶3; Wood Dec. ¶ 4);

    vi. gold options are a good investment for retirement savings and after investing with ACM and ARGWM the customer would have more than enough money to retire within just a few months (Osborn Dec. ¶ 3);

    vii. ACM is registered with the Commission (Wood Dec. ¶ 9-11);

    viii. ACM uses TD Ameritrade to clear commodity options trades (*Id*. ¶ 11); and

    ix. ACM had been in business for 11 years (*Id*. ¶ 3).

One or more employees or agents of ACM and ARGWM knew that these statements were false or recklessly disregarded the truth of these statements while making them. Grady Dec. ¶ 2-3; Patrick Dec. ¶ 6, 22-23 and Patrick Dec. Ex. A. Defendants did not trade commodity

options on behalf of customers, but misappropriated all of the funds they solicited and accepted for that purpose. Patrick Dec. ¶ 6, 22-23.

ACM has never been registered with the Commission in any capacity, and neither TD Ameritrade nor, on information and belief, any other clearing firm had any type of clearing relationship with ACM. Grady Dec. ¶ 2-3; Patrick Dec. ¶ 6, 22-23. Further, ACM has only been in business for at most two years, not 11 years as ACM represented. Patrick Dec. ¶ 7 and Patrick Dec. Ex. A.

Based on ACM's and ARGWM's above misrepresentations, at least 15 customers agreed to invest $483,725.88 with ACM and ARGWM for the purpose of trading commodity options with ACM and ARGWM and wired the money to bank accounts in the names of Alliance Capital LLC ("AC"), ACM, and ARGWM at ACM's and ARGWM's direction. *Id*. ¶ 22 and Patrick Dec. Ex. G.

Defendants did not provide customers with any documentation of their investments or account activity statements (Abbey Dec. ¶ 7-8, 15; Osborn Dec. ¶ 12; Plante Dec. ¶ 10; Wood Dec. ¶ 15), and when one customer asked how his investment was doing, ACM and ARGWM, by and through their employees and agents, advised him to watch the price of gold on business news television stations. Abbey Dec. ¶ 8.

When customers requested that ACM and ARGWM sell their purported commodity options and return the balance of the funds to the customers, ACM and ARGWM, by and through their employees and agents, refused and instead pressured customers not to sell their investments. Abbey Dec. ¶ 9; Plante Dec. ¶ 7. No money was ever returned to the customers. Abbey Dec. ¶ 14; Osborn Dec. ¶ 12; Plante Dec. ¶ 10; Wood Dec. ¶ 18; Patrick Dec. ¶ 11, 19.

Within a few months of investing with ACM and ARGWM, ACM and ARGWM, by and through their employees and agents, advised customers that all of their funds had been lost trading commodity options and the only way to recoup their investments was to invest additional funds with ACM and ARGWM. Plante Dec. ¶ 9; Abbey Dec. ¶ 11-13.

At least three customers paid Defendants approximately $27,300 for what ACM and ARGWM, by and through their employees and agents, described as "protection" for the customers' investments. Abbey Dec. ¶ 11-12 and Ex. C; Wood ¶ 4; Osborn ¶ 7, 9. ACM and ARGWM, by and through their employees and agents, referred to this "protection" as a "put option" or a "short cushion" that was purportedly meant to purchase additional gold options if the price per ounce of gold went below a certain price. *Id*. Defendants misappropriated these funds for their personal use as well. Patrick ¶ 22-23.

**B.     Defendants Misappropriated Customer Funds**

Defendants never disclosed to customers that their funds would be used for any purposes other than trading commodity options. Patrick Dec. ¶ 23. Nevertheless, Defendants misappropriated all of the at least $483,725.88 that they solicited and accepted from customers for the purpose of trading commodity options. Patrick Dec. ¶ 22-23. Defendants used the misappropriated funds for various personal expenses and purchases, including, but not limited to, restaurants, gambling, entertainment, and retail purchases. *Id*. Defendants never disclosed to customers that their funds would be, or had been, used for these purposes. Patrick Dec. ¶ 23.

**C.     Gutterman Controls ACM, AC, and ARGWM**

Gutterman is the founder and managing member of ACM, AC, and ARGWM, and during the relevant time, held himself out to the public as such. Patrick Dec. ¶ 7. Upon information and belief, Gutterman manages the day to day operations of ACM, AC, and ARGWM. *Id.* During

the relevant time, Gutterman was the sole authorized signatory on bank accounts in the names of ACM, AC, and ARGWM.  Patrick Dec. ¶ 20.

### III.     GROUNDS FOR DEFAULT JUDGMENT

When a party against whom a default judgment is sought has failed to plead or otherwise assert a defense, and that fact has been documented, the clerk shall enter the party's default.  Fed. R. Civ. P. 55(a).  The party seeking the default shall then apply to the court for a default judgment.  Fed. R. Civ. P. 55(b).  A party may properly obtain a default judgment against a defendant upon the failure of that defendant to plead or otherwise defend the action.  *CFTC v. FX Professional Intern. Solutions, Inc.*, 2010 WL 5541050 at *4 (S.D. Fla. Nov. 29, 2010); *Dunn v. Prudential Ins. Co. of America*, 2011 WL 1298156 at *3-4 (M.D. Fla. April 4, 2011); *Vaccaro v. Custom Sounds, Inc.*, 2009 U.S. Dist. LEXIS 113982 (M.D. Fla. Nov. 19, 2009).  The grant or denial of a motion for default judgment lies within a district court's sound discretion.  *Hamm v. DeKalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985).  Further, if a district court determines that a defendant is in default, then well-pled factual allegations of the complaint, except those relating to unspecified damages, will be taken as true and liability is established by the entry of a default.  *Sampson v. Brewer, Michaels & Kane, LLC*, 2010 WL 2432084 (M.D. Fla. May 26, 2010) (*citing Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)); *see also* Fed. R. Civ. P. 8(b)(6) (effect of failure to deny an allegation).  Moreover, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  *Pope v. United States*, 323 U.S. 1, 12 (1944).

Here, Defendants were served with the summons and Complaint on April 11, 2012 and their answers were due on May 2, 2012.  However, to date, they have failed to answer or

otherwise respond to the Complaint [D.E. 1] and have not appeared in this action.  *See generally* Docket.  The Clerk, upon prior motion by the CFTC, already has entered defaults against Defendants [D.E. 28].  In light of the well-pled facts set forth in the CFTC's Complaint [D.E. 1] and in the attached exhibits, the CFTC respectfully submits that the entry of final judgment against Defendants is warranted in this matter.

  The Commission now seeks a default judgment against Defendants that:

   A. Finds Defendants liable for violating Section 4c(b) of the Act, 7 U.S.C. §§ 6c(b), and Regulations 32.9 and 33.10, 17 C.F.R. §§ 32.9 and 33.10 (2012);

   B. Permanently enjoins Defendants from further violating the Act as amended;

   C. Imposes trading and registration bans against Defendants;

   D. Requires Defendants to pay restitution in the amount of $483,725.88 plus post-judgment interest;

   E. Requires Defendants to pay a civil monetary penalty of $2,100,000 plus post-judgment interest, an amount equivalent to a $140,000 civil monetary penalty for each of the 15 individuals solicited to invest in Defendants' fraudulent scheme; and

   F. Orders such ancillary relief as this Court deems necessary and appropriate under the circumstances.

  The CFTC respectfully requests that the Court, as authorized by Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2006), and pursuant to its own equitable powers, grant the CFTC's Motion, enter final judgment against Defendants because they have failed to answer or otherwise defend against the Commission's Complaint, and issue a final order in the form of the Proposed Order, filed contemporaneously with this Application, a copy of which has been delivered to the Court via email as required by the Court's Case Management Procedures, that grants permanent injunctive relief, orders restitution, and imposes an appropriate civil monetary penalty against Defendants.

June 4, 2012                                    Respectfully Submitted,


/s/ Robert Howell_____
Robert Howell (Florida Special Bar No. A5501716)
rhowell@cftc.gov
Susan Gradman (Florida Special Bar No. A5501721)
sgradman@cftc.gov

**Attorneys for Plaintiff**
U.S. Commodity Futures Trading Commission
525 W. Monroe St., Suite 1100
Chicago, IL 60661
(312) 596-0590 (Howell direct dial)
(312) 596-0523 (Gradman direct dial)
(312) 596-0714 (facsimile)


### Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by UPS overnight on June 4, 2012 on the parties of record on the Service List below.


s/ Robert Howell_____
Robert Howell


### SERVICE LIST

Alliance Capital Metals
c/o Abraham Gutterman, Registered Agent
2221 NE 164 Street
North Miami Beach, FL 33160

Abraham Gutterman
205 N. 9th Street
Apt. 2A
Brooklyn, NY 11211

AR Goldman Wealth Management, LLC
c/o Spiegel & Utrera, P.A., Registered Agent
1840 SW 22nd Street., 4th Floor
Miami, FL 33145