**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-21047-CIV-COOKE**

U.S. COMMODITY FUTURES
TRADING COMMISSION,

        Plaintiff,

        v.

ABRAHAM GUTTERMAN,
ALLIANCE CAPITAL METALS LLC, and
AR GOLDMAN WEALTH MANAGEMENT,
LLC d/b/a U.S. PRINCIPAL FINANCIAL
SERVICES,

        Defendants.
_____/

**ORDER FOR ENTRY OF DEFAULT JUDGMENT, PERMANENT INJUNCTION,**
**CIVIL MONETARY PENALTY, AND ANCILLARY EQUITABLE RELIEF**

THIS MATTER is before me upon Plaintiff U.S. Commodity Futures Trading Commission's ("CFTC") Motion for Final Default Judgment, Permanent Injunction, Civil Monetary Penalty, and Ancillary Equitable Relief against Defendants Pursuant to Federal Rule of Civil Procedure 55(b) and Local Rule 7.1(a)(1)(E).  (ECF No. 30).  Having reviewed the motion and being otherwise fully advised in the premises, I hereby find as follows:

## I.    INTRODUCTION

On March 15, 2012, Plaintiff United States Commodity Futures Trading Commission ("CFTC" or "Commission") filed its Complaint for injunctive and other equitable relief and for civil monetary penalties ("Complaint") (ECF No. 1) against Defendants, Abraham Gutterman ("Gutterman"), Alliance Capital Metals LLC ("ACM"), and AR Goldman Wealth Management, LLC d/b/a U.S. Principal Financial Services ("ARGWM")(collectively, "Defendants").

The Complaint (ECF No. 1) alleges that, from at least November 2009 to March 2012 (the

"relevant period"), ACM and ARGWM, by and through their employees and agents, including Gutterman, as their controlling person, fraudulently solicited and accepted at least $483,725.88 from at least fifteen customers for the purpose of trading gold and oil commodity options contracts ("commodity options").   Instead of trading the commodity options, ACM, ARGWM, and Gutterman misappropriated all of these funds for Defendants' personal use.   ACM and ARGWM, by and through their employees and agents, falsely represented to customers and prospective customers that ACM and ARGWM were successful options trading companies that made a lot of money for their customers, and that ACM was registered with the CFTC, among other things. Specifically, the Complaint (ECF No. 1) alleged Defendants have engaged in options fraud, in violation of Section 4c(b) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 6c(b), and Regulations 32.9 and 33.10, 17 C.F.R. §§ 32.9, 33.10 (2012), and sought, *inter alia,* injunctive relief, disgorgement, restitution and civil monetary penalties.

Defendants' Answers were due on or before May 2, 2012.  None of the Defendants have filed or served an Answer or otherwise defended against the CFTC's Complaint.  On May 17, 2012, the CFTC filed its Request for Clerk's Entry of Default against Defendants pursuant to Fed. R. Civ. P. 55(a).  (ECF No. 27).  The Clerk of the Court entered the defaults against Defendants on May 18, 2012.  (ECF No. 28).  Thereafter, on May 30, 2012, I entered an Order Requiring Motion for Default Judgment and Order to Show Cause commanding Defendants to show cause within seven days from the date of the Order why a motion for default judgment should not be granted.  (ECF No. 29).  To date, none of the Defendants have submitted arguments demonstrating why final default judgment should not be entered against them.

The CFTC now has submitted its Motion for Entry of Default Judgment, Permanent Injunction, Civil Monetary Penalty, and Ancillary Equitable Relief Against Defendants Gutterman, ACM and ARGWM ("Motion") pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 7(a)(1)(E).

(ECF No. 30).  The Court has considered carefully the Complaint, the allegations of which are well-pled and hereby taken as true; the CFTC's Memorandum in Support of its Motions for *Ex Parte* Relief and Injunctive and Other Equitable Relief; the Appendix of Declarations and Exhibits in Support thereof; the CFTC's Motion, and all oppositions thereto (there being none); and being fully advised in the premises, hereby:

**GRANTS** the CFTC's Motion and enters this Order finding Defendants liable as to all violations as alleged in the Complaint [D.E. 1] and imposing on Defendants a permanent injunction, registration and trading bans, civil monetary penalties, and ancillary equitable relief, as more fully described herein.

## II.    PARTIES

1.    Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq*.

2.    Defendant Alliance Capital Metals, LLC is a Florida limited liability company with a business address in Aventura, Florida and a website address of alliancecapitalmetals.com.  ACM was incorporated in Florida as a limited liability company on November 18, 2011.  ACM has had at least four employees who solicit public customers for the purpose of trading gold commodity options contracts ("gold options").  ACM has never been registered with the Commission in any capacity.

3.    Defendant AR Goldman Wealth Management, LLC, doing business as U.S. Principal Financial Services, is a Florida limited liability company with a business address in Aventura, Florida.  ARGWM was incorporated in Florida as a limited liability company on November 9, 2009.  U.S. Principal Financial Services was registered as a fictitious name for AR Goldman Wealth Management, LLC on August 2, 2010.  ARGWM has had at least two employees that solicit or

have solicited public customers for the purpose of trading gold options and one employee that solicits or has solicited public customers for the purpose of trading oil options.  ARGWM has never been registered with the Commission in any capacity.

4.   Defendant Abraham Gutterman is the managing member of ACM and ARGWM and is responsible for all facets of ACM's and ARGWM's operations.  Gutterman currently resides in Brooklyn, New York.  During at least some of the period of time at issue in this matter, Gutterman resided in Florida.  Gutterman has never been registered with the Commission in any capacity.

### III.   FINDINGS OF FACT

**A.   Solicitation Fraud**

5.   Defendants ACM and ARGWM, by and through their employees and agents, solicited U.S. customers to invest in commodity options via cold-calls, ACM's website, and at least one face-to-face meeting in a bar in Hialeah, Florida.  ACM and ARGWM, by and through their employees and agents, used high-pressure sales tactics calling customers repeatedly and promising large profits to convince them to invest.

6.   Specifically, ACM and ARGWM, by and through their employees and agents, made the following misrepresentations and omissions of material fact to persuade customers to invest with them:

    a.   customers would "make a killing" if they invested in commodity options through ACM and ARGWM;

    b.   customers would make approximately $200,000 to $300,000 in less than three months with a $20,000 investment in gold options;

    c.   the majority of ACM's and ARGWM's prior customers bought gold options in twenty contract lots and those customers' investments had increased significantly;

    d.   customers needed to "get in now" because the price of gold was about to rise from prices of approximately $1,700 to $1,800 per ounce to $2,500 per ounce;

    e.   for every dollar the price per ounce of gold goes up, the customer's options contracts would increase in value by $500-$2,000;

    f.   gold options are a good investment for retirement savings, and after investing with ACM and ARGWM the customer would have more than enough money to retire within just a few months;

    g.   ACM is registered with the Commission;

    h.   ACM uses TD Ameritrade to clear commodity options trades; and

    i.   ACM had been in business for eleven years.

7.   One or more employees or agents of ACM and ARGWM knew that these statements were false or recklessly disregarded the truth of these statements while making them. Defendants did not trade commodity options on behalf of customers, but misappropriated all of the funds they solicited and accepted for that purpose.

8.   ACM has never been registered with the Commission in any capacity, and neither TD Ameritrade nor any other clearing firm had any type of clearing relationship with ACM. Further, ACM has only been in business for at most two years, not eleven years as ACM represented.

9.   Based on ACM's and ARGWM's above misrepresentations, at least fifteen customers agreed to invest $483,725.88 with ACM and ARGWM for the purpose of trading commodity options with ACM and ARGWM, and wired the money to bank accounts in the names of ACM, ARGWM, and related entity Alliance Capital LLC ("AC"), at ACM's and ARGWM's direction.

10.   Defendants did not provide customers with any documentation of their investments or account activity statements.  When one customer asked how his investment was faring, ACM and ARGWM, by and through their employees and agents, advised him to watch the price of gold on business news television stations.

11.   When customers requested that ACM and ARGWM sell their purported commodity options and return the balance of the funds to the customers, ACM and ARGWM, by and through their employees and agents, refused and instead pressured customers not to sell their investments. No money was ever returned to the customers.

12.   Within a few months after customers invested with ACM and ARGWM, ACM and ARGWM, by and through their employees and agents, advised customers that all of their funds had been lost trading commodity options and the only way to recoup their investments was to invest additional funds with ACM and ARGWM.

13.   At least three customers paid Defendants approximately $27,300 for what ACM and ARGWM, by and through their employees and agents, described as "protection" for the customers' investments.  ACM and ARGWM, by and through their employees and agents, referred to this "protection" as a "put option" or a "short cushion" that was purportedly meant to purchase additional gold options if the price per ounce of gold went below a certain price.  Defendants misappropriated these funds for their personal use as well.

**B.      Defendants Misappropriated Customer Funds**

14.   Defendants never disclosed to customers that their funds would be used for any purposes other than trading gold and oil options.  Nevertheless, Defendants misappropriated all of the at least $483,725.88 that they solicited and accepted from customers for the purpose of trading gold and oil options.  Defendants used the misappropriated funds for various personal expenses and purchases, including, but not limited to, restaurants, gambling, entertainment, and retail purchases.

Defendants never disclosed to customers that their funds would be, or had been, used for these purposes.

**C.    Gutterman Controls ACM, AC, and ARGWM**

15.   Gutterman is the founder, principal, president and managing member of ACM, AC, and ARGWM, and during the relevant period, held himself out to the public as such.   Gutterman manages the day-to-day operations of ACM, AC, and ARGWM.   During the relevant time, Gutterman was the sole authorized signatory on bank accounts in the names of ACM, AC, and ARGWM.

## IV.    CONCLUSIONS OF LAW

**A.    <u>Default</u>**

16.   When a party against whom a default judgment is sought has failed to plead or otherwise assert a defense, and that fact has been documented, the clerk shall enter the party's default. Fed. R. Civ. P. 55(a).   The party seeking the default shall then apply to the court for a default judgment. Fed. R. Civ. P. 55(b).   Fed. R. Civ. P. 55(b)(2) provides that judgment by default may be entered by a district court against a defendant upon the failure of that defendant to plead or otherwise defend.   *CFTC v. FX Professional Intern. Solutions, Inc.*, No. 1:10-cv-22311-PCH, 2010 WL 5541050 at *4 (S.D. Fla. Nov. 29, 2010); *Dunn v. Prudential Ins. Co. of America*, No. 8:10-cv-1626-T-24-TGW, 2011 WL 1298156 at *3-4 (M.D. Fla. April 4, 2011); *Vaccaro v. Custom Sounds, Inc.,* No. 3:08-cv-776-J-32JRK, 2009 WL 4015569 (M.D. Fla. Nov. 19, 2009).   The grant or denial of a motion for default judgment lies within a district court's sound discretion.   *Hamm v. DeKalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985).   Where a party fails to respond, after notice, the court is justified in entering a judgment against the defaulting party.   *Natures Way Marine, LLC v. N. Am. Materials, Inc.*, No. 08-0005-WS-B, 2008 WL 801702 (S.D. Ala. 2008) (citing *Int'l Brands USA, Inc. v. Old St. Andrews Ltd.,* 349 F. Supp. 2d 256, 261 (D. Conn. 2004)).

17. Further, if a district court determines that a defendant is in default, then well-pled factual allegations of the complaint, except those relating to unspecified damages, will be taken as true and liability is established by the entry of a default.  *Sampson v. Brewer, Michaels & Kane, LLC*, No. 6:09-cv-2114-Orl-31DAB, 2010 WL 2432084 (M.D. Fla. May 26, 2010) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)); *see also* Fed. R. Civ. P. 8(b)(6) (effect of failure to deny an allegation).  Moreover, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  *Pope v. United States*, 323 U.S. 1, 12 (1944).

18.  The Clerk of the Court already has entered defaults against Defendants [D.E. 28].

19. This Court hereby finds that the CFTC's allegations in the Complaint [D.E. 1] against Defendants are well-pleaded and thereby taken as true, that these allegations support finding of violations of the Act and Regulations, and in accordance with Fed. R. Civ. P. 55(b)(2), a default judgment is hereby entered against Defendants.

**A.      Jurisdiction and Venue**

20.  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2006), authorizes the CFTC to seek injunctive relief in district court against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.  Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that Defendants transacted business in the Southern District of Florida, and the acts and practices in violation of the Act occurred within this District, among other places.

**B.      The Commodity Exchange Act**

20.  In analyzing the CFTC's Motion, the Court acknowledges a crucial purpose of the

8

Act, *inter alia*, "protecting the innocent individual investor – who may know little about the intricacies and complexities of the commodities market – from being misled or deceived."  *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1329 (11th Cir. 2002), *cert. denied*, 543 U.S. 1034 (2004). "*[C]aveat emptor* has no place in the realm of federal commodities fraud.  Congress, the CFTC, and the Judiciary have determined that customers must be zealously protected from deceptive statements by brokers who deal in these highly complex and inherently risky financial instruments." *Id.* at 1334.

**C.      Defendants Violated Section 4c(b) of the Act and Regulations 32.9 and 33.10**

21.  Section 4c(b) of the Act, 7 U.S.C. § 6c(b), provides: "No person shall ... enter into or confirm the execution of any transaction involving any ... option ... contrary to any ... regulation of the Commission."  Regulation 32.9 makes it unlawful for any person, directly or indirectly, to cheat or defraud or attempt to cheat or defraud any other person, or to deceive or attempt to deceive any other person by any means whatsoever, in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, any off exchange commodity option transaction. 17 C.F.R. § 32.9 (2012).  Regulation 33.10 makes it unlawful for any person, directly or indirectly, to cheat or defraud or attempt to cheat or defraud any other person, or to deceive or attempt to deceive any other person by any means whatsoever, in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any on exchange commodity option transaction.  17 C.F.R. § 33.10 (2012).  Under these provisions, commodity options fraud occurs when a person (1) makes a material misrepresentation or omission in connection with a commodity options transaction (2) with scienter.  *R.J. Fitzgerald & Co., Inc.*, 310 F.3d at 1328; *CFTC v. Rosenberg,* 85 F. Supp. 2d 424, 446-47 (D.N.J. 2000).  In an enforcement action brought to protect the public interest, the Commission need not prove reliance to establish an antifraud violation.  *See R.J. Fitzgerald & Co.*, 310 F. 3d at 1328 n.6; *CFTC v. Heffernan*, 245 F. Supp. 2d

1276, 1291 & n.24 (S.D. Ga. 2003) (proof of reliance not required to establish pool fraud violation of section 4*o*(1)(A)); *Rosenberg*, 85 F. Supp. 2d at 446.

22.    During the course of their solicitations to purchase both on-exchange and off-exchange commodity options contracts, ACM and ARGWM, by and through their employees and agents, deceived and defrauded customers and prospective customers by (1) misrepresenting that ACM and ARGWM would open accounts on behalf of investors to purchase commodity options and would trade the accounts for them; (2) misrepresenting that ACM and ARGWM had successfully traded gold options for customers and made customers considerable profits; (3) misrepresenting that ACM was registered with the CFTC; (4) misrepresenting that ACM cleared commodity option and/or futures contracts through TD Ameritrade; (5) misrepresenting that ACM had been in business for eleven years; and, along with Gutterman, (6) misappropriating customer funds.   One or more employees of ACM and ARGWM made these misrepresentations and omissions, with scienter, in order to induce potential customers to invest with ACM and ARGWM. These misrepresentations and omissions are material in that a reasonable investor would want to know, among other things, that ACM, ARGWM and Gutterman misappropriated all of the customer money, ACM and ARGWM, by and through their employees and agents, solicited and accepted for the purpose of trading commodity options, and that ACM had never been registered with the CFTC and had no relationship with a clearing firm.   Accordingly, each of the elements of commodity options fraud under Section 4c(b) of the Act and Regulations 32.9 (off-exchange) and 33.10 (on-exchange) is met in this case, and Defendants, therefore, violated Section 4c(b) of the Act and Regulations 32.9 and 33.10.

**D.**    **Derivative Liability**

      **1.**    **Controlling Person Liability**

23.   Gutterman controlled ACM and ARGWM and, as a controlling person, is liable for

ACM's and ARGWM's violations of the Act pursuant to Section 13(b) of the Act, 7 U.S.C.

§ 13c(b), which provides that a defendant who fails to act in good faith or knowingly induces,

directly or indirectly, acts constituting a violation of the Act may be liable as a controlling person of

an entity if the defendant possesses, directly or indirectly, the power to direct and cause the

direction of the management and policies of that entity.  *See Monieson v. CFTC*, 996 F.2d 852, 858

(7th Cir. 1993); *R.J. Fitzgerald & Co.*, 310 F.3d at 1334.  A "fundamental purpose" of the statute is

"to reach behind the corporate entity to the controlling individuals of the corporation and to impose

liability for violations of the Act directly on such individuals as well as on the corporation itself."

*R.J. Fitzgerald & Co.*, 310 F.3d at 1334 (quoting *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1567 (11th Cir.

1995)).

     24.   To establish controlling person liability under Section 13(b) of the Act, the CFTC

must show (1) control and (2) lack of good faith or knowing inducement of the acts constituting the

violation.  *See In re First Nat'l Trading Corp.*, [1992-1994 Transfer Binder] Comm. Fut. L. Rep.

(CCH) ¶ 26,142, at 41,787 (CFTC July 20, 1994), *aff'd without opinion sub nom. Pick v. CFTC,* 99

F.3d 1139 (6th Cir. 1996).  To establish control, a defendant must possess general control over the

operation of the entity principally liable.  *See R.J. Fitzgerald & Co.*, 310 F.3d at 1334.  Evidence

that a defendant is an officer, founder, principal, or the authorized signatory on the company's bank

accounts indicates the power to control a company.  *See In re Spiegel*, [1987-1990 Transfer Binder]

Comm. Fut. L. Rep. (CCH) ¶ 24,103, at 34,767 (CFTC Jan. 12, 1988); *see also Apache Trading

Corp.,* [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,251, at 38,795 (CFTC Mar.

11, 1992) (finding that an individual controls a corporation where he "directs the economic aspects

of the firm").

     25.   Gutterman is the founder and managing member of ACM, AC, and ARGWM.  He

managed the day to day operations of these entities, including the solicitation of funds.  Gutterman

is the sole authorized signatory on bank accounts in the names of AC, ACM, and ARGWM.  In addition, Gutterman misappropriated customer funds deposited into bank accounts in the names of AC, ACM, and ARGWM for the purpose of trading gold and oil options.  Accordingly, Gutterman was a controlling person of those entities, and Gutterman induced, directly or indirectly, ACM's and ARGWM's conduct that constitutes violations of the Act.  Pursuant to Section 13(b) of the Act, he is liable for all of ACM and ARGWM's violations of the Act.

**2.**      **ACM's and ARGWM's Principal Liability**

26. Under Section 2(a)(1)(B) of the Act, as amended, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2012), strict liability is imposed upon principals for the actions of their agents acting within the scope of their employment.[1] *Rosenthal & Co. v. CFTC*, 802 F.2d 963, 966 (7th Cir. 1986) (principals are strictly liable for the acts of their agents); *Dohmen-Ramirez v. CFTC*, 837 F.2d 847, 857-58 (9th Cir. 1988).  ACM's and ARGWM's employees' actions, including Gutterman's, were committed within the scope of their employment with, and operation of, ACM and ARGWM.  Thus, ACM and ARGWM are liable for Gutterman's and their other employees' violations of the Act as their principals.

## V.      REMEDIES

**A.**      **Permanent Injunction Against Defendants**

Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), authorizes and directs the CFTC to enforce the Act and Regulations and allows a district court, upon a proper showing, to grant a permanent injunction.  *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008).  In an action for permanent injunctive relief, the CFTC is not required to make a specific showing of irreparable

---

[1] Section 2(a)(1)(B) of the Act, as amended, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2012), provide, in relevant part, that the act, omission, or failure of any official, agent, or other person acting for an individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person.

injury or inadequacy of other remedies, which private litigants must make. *CFTC v. Muller,* 570 F.2d 1296, 1300 (5th Cir. 1978); *United States v. Quadro Corp.,* 928 F. Supp. 688, 697 (E.D. Tex. 1996) (citations omitted), *aff'd,* 127 F.3d 34 (5th Cir. 1997); *CFTC v. British Am. Commodity Options Corp.,* 560 F.2d 135, 141-42 (2d Cir. 1977), *cert. denied*, 438 U.S. 905 (1978).  Rather, the CFTC makes the requisite showing for issuance of injunctive relief when it presents a prima facie case that the defendant has engaged, or is engaging, in illegal conduct, and that there is a likelihood of future violations. *CFTC v. American Bd. of Trade, Inc.,* 803 F.2d 1242, 1250-51 (2d Cir. 1986); *CFTC v. Hunt,* 591 F.2d 1211, 1220 (7th Cir. 1979), *cert. denied*, 442 U.S. 921 (1979).

In a CFTC enforcement case, the Eleventh Circuit held that the district court's finding of a likelihood of future violations supported its entry of a permanent injunction.  *See CFTC v. Sidoti,* 178 F.3d 1132 (11th Cir. 1999).  In *Sidoti,* the Eleventh Circuit stated: "In light of the likelihood of future violations, the district court did not abuse its discretion in enjoining further violations of the Act." 178 F.3d at 1137; *see also SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir.1982); *SEC v. Blatt,* 583 F.2d 1325, 1334 (5th Cir. 1978).  Whether such a likelihood of future violations exists depends on the "totality of the circumstances." *SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 807 (2d Cir. 1975); *CFTC v. Morgan, Harris & Scott, Ltd.,* 484 F. Supp. 669, 676 (S.D.N.Y. 1979).  Foremost among these circumstances is the past illegal conduct of the defendant, from which courts may infer a likelihood of future violations. *British Am. Commodity Options Corp.,* 560 F.2d at 142; *Mgmt. Dynamics, Ltd.,* 515 F.2d at 807; *Carriba Air, Inc.,* 681 F.2d at 1322.

The scope of the injunctive relief can be tailored to meet the circumstances of the violations shown.  For example, upon the CFTC's showing of a violation, courts have entered permanent injunctions against future violations of the Act. *See, e.g., CFTC v. U.S. Metals Depository Co.,* 468 F. Supp. 1149 (S.D.N.Y. 1979).  Other courts have issued broader injunctions prohibiting trading activity, in addition to enjoining defendants from future violations. *See, e.g., Wilshire Inv. Mgmt.*

*Corp.*, 531 F.3d at 1346 (upholding the district court's permanent injunction prohibiting the defendants from "engaging in any commodity-related activity"); *CFTC v. Noble Wealth Data Info. Servs.,* 90 F. Supp. 2d 676, 692 (D. Md. 2000) ("[t]he pervasiveness and seriousness of [the defendant's] violation justify the issuance of a permanent injunction prohibiting him from violating the Act and from engaging in any commodity-related activity, including soliciting customers and funds"), *aff'd sub nom. CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002); *Rosenberg,* 85 F. Supp. 2d at 454-55 (permanently enjoining defendant from trading commodities on behalf of others). Under these standards, permanent injunctive relief, including a comprehensive trading ban, is warranted against Defendants.

Accordingly, this court enters a permanent injunction restraining Defendants and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them from, directly or indirectly:

i)      violating Section 4c(b) of the Act, 7 U.S.C. §§ 6c(b), and Regulations 32.9 and 33.10, 17 C.F.R. §§ 32.9, 33.10 (2012);

ii)     trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a);

iii)    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2012) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) ("forex contracts"), for their own personal account or for any account in which they has a direct or indirect interest;

iv)     having any commodity futures, options on commodity futures, commodity options, security futures products and/or forex contracts traded on their behalf;

v)      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

vi)     soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

vii)    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

viii)   acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

**B.      <u>Monetary Relief</u>**

The unqualified grant of statutory authority to issue an injunction under the Act carries with it the full range of equitable remedies, among which is the power to grant restitution. *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008); *see also CFTC v. American Metals Exch. Corp.*, 991 F.2d 71, 76 (3d Cir. 1993) ("A number of courts have held that district courts have the power to order disgorgement as a remedy for violations of the Act for 'the purpose of depriving the wrongdoer of his ill-gotten gains and deterring violations of the law'."). In addition, Section 6c(d) of the Act, 7 U.S.C. § 13a-1(d) (2006), authorizes the imposition of civil monetary penalties. The CFTC seeks both forms of monetary relief in this case.

1.     **Restitution**

The Eleventh Circuit Court of Appeals has held that equitable remedy of restitution under the Act (prior to the effective date of the Dodd-Frank Act in July 2011) "does not take into consideration the plaintiff's losses, but only focuses on the defendant's unjust enrichment." *Wilshire*, 531 F.3d at 1345. Thus, "[t]he proper measurement [of restitution] is the amount that [Defendants] wrongfully gained." *Id.*; *accord CFTC v. Levy*, 541 F.3d 1102, 1113 (11th Cir. 2008) (noting that the defendant "can only be liable in restitution to the extent of his unjust enrichment" (citing *Wilshire*, 531 F.3d at 1345)). An appropriate restitution award in this case is calculated with straightforward arithmetic, *i.e.* the amount taken less the amount returned (zero) and the amount lost in trading (zero); in this instance, $483,725.88 plus post-judgment interest.

Accordingly, this Court orders Defendants to pay, jointly and severally, restitution in the amount of $483,725.88, plus post-judgment interest. Post-judgment interest on the Defendants' restitution obligation shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2006).

To effect payment by Defendants and the distribution of restitution, the Court hereby appoints the National Futures Association as Monitor. The Monitor shall collect restitution payments from Defendants and shall make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the Monitor shall not be liable for any action or inaction arising from its appointment as Monitor, other than actions involving fraud. Defendants shall make their required restitution payments payable in the name of "Gutterman— Restitution Fund" and shall send such restitution payments by either electronic funds transfer or by U.S. postal money order, certified check, bank cashier's check, or bank money order to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago,

16

Illinois, 60606, under a cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  The paying Defendant shall simultaneously transmit copies of the cover letter and the form of payment to (a) Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Center, 1155 21st Street, NW, Washington, DC 20581, and (b) Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

The Monitor shall oversee Defendants' restitution obligation and shall have the discretion to determine the manner of distribution of funds in an equitable fashion to the Defendants' customers, or may defer distribution until such time as it may deem appropriate.  In the event that the amount of restitution payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative costs of making a restitution distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V.B.2 below.  To the extent that any funds accrue to the U.S. Treasury as a result of Defendants' restitution obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth in the preceding paragraphs.

Any amount paid to any customer pursuant to this judgment shall not limit the ability of that customer to independently prove in a separate action that a greater amount is owed from any person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under federal, state, or common law to assert a claim for recovery against Defendants, subject to any offset or credit that Defendants may be entitled to claim under the law governing that customer's claim.  Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer is hereby explicitly made an intended third-party beneficiary of this judgment and may seek to enforce compliance with this judgment to obtain satisfaction of any portion of the restitution amount that has not been paid, to ensure compliance with any provision of this judgment, and to

hold Defendants in contempt for any violations of any provision of this judgment.

     **2.**     <u>**Civil Monetary Penalty**</u>

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2006), provides that "the [CFTC] may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation [of the Act or Regulations] a civil penalty." Pursuant to Section 6c(d)(1)(A) of the Act, 7 U.S.C. § 13a-1(d)(1)(A) (2006), and Regulation 143.8(a)(1), 17 C.F.R. § 143.8(a)(1) (2012), for the time period at issue in the case at bar, the civil monetary penalty shall be not more than the greater of $140,000 for each violation of the Act or triple the monetary gain to Defendants.

The CFTC has set forth several factors to consider in assessing a civil monetary penalty. These factors include: the relationship of the violation at issue to the regulatory purposes of the Act and whether or not the violations involved core provisions of the Act; whether or not scienter was involved; the consequences flowing from the violative conduct; financial benefits to a defendant; and harm to customers or the market. *Noble Wealth*, 90 F. Supp. 2d at 694; *In re Grossfield*, [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921 at 44,467-8 (CFTC Dec. 10, 1996), *aff'd*, 137 F.3d 1300 (11th Cir. 1998). Civil monetary penalties should "reflect the abstract or general seriousness of each violation and should be sufficiently high to deter future violations," which means that civil monetary penalties should make it financially detrimental to a defendant to fail to comply with the Act and Regulations so that the defendant would rather comply than risk violations. *Grossfield*, ¶ 26,921 at 44,467-8. As the Commission has stated:

> [Civil monetary] penalties signify the importance of particular provisions of the Act and the [CFTC]'s rules, and act to vindicate these provisions in individual cases, particularly where the respondent has committed the violations intentionally. Civil monetary penalties are also exemplary; they remind both the recipient of the penalty and other persons subject to the Act that noncompliance carries a cost. To effect this exemplary purpose, that cost must not be too low or potential violators may be encouraged to engage in illegal conduct.

*In re GNP Commodities, Inc.* [1990-92 Transfer Binder] Com. Fut. L. Rep. (CCH) ¶ 25,360 at 39,222 (CFTC Aug. 11, 1992), *aff'd sub nom. Monieson*, 996 F.2d at 852; *see also Reddy v. CFTC*, 191 F.3d 109, 123 (2d Cir. 1999) (civil monetary penalties serve to further the Act's remedial policies and to deter others from committing similar violations).

This case warrants the imposition of a substantial civil monetary penalty against Defendants because they knowingly engaged in fraud, which is a core violation of the Act. *See Grossfeld*, ¶ 26,921 at 44,467 and n. 28 (citation omitted); *see also CFTC v. United Investors Group, Inc.*, 440 F. Supp. 2d 1345, 1361 (S.D. Fla. 2008) (determining that, among other things, "the gravity of the offenses, the brazen and intentional nature of the violations, [and] the vulnerability of the victims" justified "imposition of a substantial and meaningful [civil monetary] penalty"). Specifically, Defendants knowingly engaged in an illegal scheme by, *inter alia*, (i) fraudulently soliciting hundreds of thousands of dollars from customers for the purported purpose of purchasing commodity options and (ii) misappropriating all of the customers' funds.

A civil monetary penalty in the total amount of $2,100,000 against Defendants, joint and several, is justified in this case. This amount represents a $140,000 civil monetary penalty for each of the fifteen individuals solicited to invest in Defendants' fraudulent scheme. The amount of the civil monetary penalty is appropriate given the repeated and egregious nature of Defendants' fraudulent scheme. *See United Investors Group, Inc.,* 440 F. Supp.2d at 1361; *see also CFTC v. Levy*, 541 F.3d 1102 (11th Cir. Fla. 2008) (holding that the Commodity Exchange Act provides for multiple civil monetary penalties for multiple violations even when those multiple violations are set forth in a single count).

Accordingly, this Court orders Defendants to pay, jointly and severally, a civil monetary penalty in the amount of $2,100,000, plus post-judgment interest. Post-judgment interest on this civil monetary penalty shall accrue beginning on the date of entry of this Order and shall be

calculated using the Treasury Bill rate prevailing on the date of this Order pursuant to 28 U.S.C. § 1961 (2006).

Defendants shall pay their civil monetary penalty by electronic funds transfer, or by U.S. Postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables --- AMZ 340
> E-mail Box: 9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-5644

If payment is to be made by electronic funds transfer, Defendant shall contact Linda Zurhorst, or her successor, at the above address to receive payment instructions and shall fully comply with those instructions.  Defendant shall accompany payment of the penalty with a cover letter that identifies the paying Defendant and the name and docket number of the proceedings.  The Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581, and the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

## C.     Miscellaneous Provisions

**Injunctive and Equitable Relief:** The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

**Partial Satisfaction:** Any acceptance by the Commission or the Monitor of partial payment

of Defendants' restitution and/or civil monetary penalty obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**Continuing Jurisdiction of this Court:** This Court shall retain jurisdiction of this cause to ensure compliance with this Order and for all other purposes related to this action.

**DONE and ORDERED** in chambers at Miami, Florida, this 26th day of June 2012.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Counsel of record*

Abraham Gutterman
205 N. 9th Street, Apartment 2A
Brooklyn, New York 11211

Alliance Capital Metals, LLC
2221 N.E. 164th Street
North Miami Beach, Florida 33160

AR Goldman Wealth Management, LLC d/b/a U.S. Principal Financial Services
Spiegel & Utrera, P.A., Registered Agent
1840 S.W. 22nd Street, 4th Floor
Miami, Florida 33145